UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE ESTATE OF HANS JORG SCHNEIDER     :
SAUTER,                               :
                        Plaintiff,    :
                                      :          14 Civ. 05812 (LGS)
            -against-                 :
                                      :          __OPINION & ORDER__
CITIGROUP INC., et al.,               :
                        Defendants.   :
                                      :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __05/27/15__

LORNA G. SCHOFIELD, District Judge:

Defendants Citigroup Inc., Grupo Financiero Banamex, S.A. de C.V., Banco Nacional de Mexico, S.A. and Banamex USA move (1) to vacate Plaintiff's dismissal without prejudice and to dismiss with prejudice all claims asserted in the Amended Complaint and (2) for sanctions against Plaintiff and its counsel under 28 U.S.C. § 1927 and the Court's inherent powers. For the reasons below, Defendants' motion is denied.

I.     BACKGROUND

Plaintiff, the purported Estate of Hans Jorg Schneider Sauter, commenced this action through its counsel, Bart S. Fisher. By Fisher's own account, litigation "had not been a major focus of [his] practice." Plaintiff sought to recover funds allegedly deposited in Banco Nacional de Mexico S.A. ("Banamex"), a Mexican bank, by the late Schneider Sauter, a Mexican-Swiss national. Plaintiff asserted that "Banamex owes" it these funds.

The initial Complaint filed July 29, 2014, alleged four causes of action against Banamex, Citigroup Inc. ("Citigroup") and Banamex USA, involving (1) fraudulent conversion that justifies piercing the corporate veil; (2) a claim under the Alien Tort Claims Act; (3) a claim under the Expedited Funds Availability Act; and (4) a claim for enforcement of money judgments under New York law. On August 27, 2014, Plaintiff, through its counsel, Fisher, filed an Amended

Complaint, which added a new Defendant, Grupo Financiero Banamex, S.A. de C.V., new factual allegations and a new cause of action asserted under the Racketeer Influenced and Corrupt Organization Act ("RICO").

On October 15, 2014, Defendants' counsel wrote to Fisher, asserting that the Amended Complaint did not comply with Federal Rule of Civil Procedure 11 because, among other things, (1) the estate did not have the capacity to sue; (2) subject matter jurisdiction was lacking because there was not complete diversity of citizenship; (3) personal jurisdiction was lacking over three Defendants; (4) the legal claims were substantively defective; and (5) Plaintiff's attempt to end-run ongoing judicial proceedings that Plaintiff had initiated in Mexico to seek essentially the same relief sought here violated principles of international comity, forum non conveniens and the act of state doctrine.  Defendants' letter cited relevant authorities and requested that Plaintiff withdraw the Amended Complaint.  Defendants' counsel followed up with a second letter on October 21, 2014, reiterating that the Amended Complaint failed to satisfy Rule 11.

Upon receiving Defendants' letter, Plaintiff's counsel, Fisher, conducted additional research on the viability of Plaintiff's claims and consulted with "experienced litigators."  Fisher concluded that some claims should be withdrawn and others modified.  He engaged the services of attorney Susan Burke to assist him with this case.

On October 25, 2014, Fisher, on behalf of Plaintiff, filed a pre-motion letter seeking leave to file a proposed Second Amended Complaint ("SAC").  Plaintiff's letter stated that, if the Court granted leave to amend, it "would have no objection to the Court vacating the October 29, 2014, response date" for Defendants to respond to the Amended Complaint and "setting a new time for a response by the Defendants."  On October 26, 2014, Defendants responded to Plaintiff's letter, arguing that Plaintiff should be required to make a formal motion to amend a second time and

that Defendants should be permitted to oppose that motion, and requesting that Defendants' time to file their motion to dismiss Plaintiff's Amended Complaint be suspended.  Plaintiff was ordered to file any motion to amend by November 10, 2014.  The October 29, 2014, deadline for Defendants' response to the Amended Complaint remained in place.

On October 28, 2014, Fisher wrote to Defendants' counsel, defending the Amended Complaint and expressing no intention to file an SAC.  In the letter, Fisher stated that the "Complaint more than meets the standards of pleading in federal courts" and that there is "more than enough controlling legal authority to support the pleadings as filed."  Fisher further stated that the cases cited by Defendants "are clearly distinguishable from this case."

On October 29, 2014, Defendants timely responded to the Amended Complaint with a motion to dismiss.  Defendants' motion made substantially similar arguments to those raised in their letters to Plaintiff and included five supporting declarations.  A supporting declaration from a criminal lawyer at Banamex stated that Mexico's Office of the Attorney General had issued an order prohibiting Banamex from taking any action with respect to Schneider Sauter's accounts during the pendency of the Attorney General's ongoing investigation into Schneider Sauter's estate.  Banamex's attorney in Mexico City provided a declaration regarding ongoing litigation and administrative proceedings in Mexico, commenced before this action, concerning Plaintiff's entitlement to the funds at issue.

Defendants expended over 800 hours preparing their motion papers; this time included travel to Mexico City to investigate the factual allegations in the Amended Complaint. Defendants engaged a third-party vendor to translate into English for its counsel's review more than 700 pages of Spanish-language documents, primarily legal documents filed in various pending Mexican judicial and administrative proceedings.  Defendants also involved Mexican

counsel in the preparation of the motion.

On November 10, 2014, Plaintiff, through Fisher, timely filed a motion seeking leave to file a proposed SAC, and attached it as an exhibit. The proposed SAC was a complete rewrite of the previous Complaints. It dropped all three foreign Defendants over whom Defendants argued the Court lacked personal jurisdiction, including Banamex, leaving Citigroup as the only remaining Defendant. The proposed SAC also jettisoned all four claims asserted in the Amended Complaint and instead replaced them with five new claims against Citigroup for (1) fraud; (2) breach of statutory banking duties; (3) negligence for violating purported duties Citigroup "owe[d] . . . to its depositories"; (4) negligent hiring and supervision; and (5) accounting and the imposition of a constructive trust.

In support of these new claims, the proposed SAC asserted new factual allegations at odds with those made in the prior complaints. Where the Amended Complaint attributed almost all of the purportedly wrongful acts to Banamex, the proposed SAC now attributed this conduct to Citigroup. For instance, the Amended Complaint at paragraph 34 asserted:

> Judge Navarro Hernandez [in Mexico's probate court] has issued 13 orders to *Banamex* between March 4, 2013, and April 7, 2014, to turn over funds from Schneider Sauter's accounts and give information about those accounts to the Schneider Sauter Estate. *Banamex* has defied and disregarded all of them, and has responded by threatening the Judge, the Schneider Sauter Estate, and representatives of the Estate.

In contrast, the proposed SAC at paragraphs 39 and 40 asserted:

> Between March 4, 2013, and April 7, 2014, Judge Navarro Hernandez issued 13 orders directing [*Citigroup*] to either turn over funds from Schneider Sauter's accounts to the Estate, or come forward with evidence to defeat those claims. . . . [*A group of Citigroup executives*] simply refused to litigate the matter in front of Judge Navarro Hernandez, as she had proven herself immune to their threats and efforts to coerce.

On November 24, 2014, Plaintiff, through Fisher, filed its opposition to Defendants' motion to dismiss the Amended Complaint, but used this filing to argue in support of its proposed SAC rather than defend the Amended Complaint.  Plaintiff's opposition stated that it would only "respond[] to the non-mooted portions of [Defendants'] motion to dismiss."  Throughout the memorandum, Plaintiff relied on its allegations in the proposed SAC, rather than those in the Amended Complaint, which was the operative complaint at issue.

Plaintiff's motion for leave to amend was denied on December 5, 2014, in an oral opinion because, among other reasons, the proposed amendment was futile.  At the December 5 hearing, Plaintiff's counsel was asked if Plaintiff would be willing to dismiss its action with prejudice, as its opposition to the motion to dismiss had not defended the operative Amended Complaint, but instead relied on the proposed SAC.  Plaintiff's newly retained counsel, Susan Burke, stated, "[W]e would be inclined to agree that the RICO and [Alien Tort Statute] counts be dismissed with prejudice but that the other counts be permitted to proceed," but requested a chance to confer with her colleagues in Mexico.  Plaintiff was given one week from the hearing to file a response and instructed, "[I]f you decide that you are not willing to drop all the claims in their entirety, please, indicate which ones you are willing to drop[;] then I will address the motion to dismiss on the remaining claims."  On December 12, 2014, Plaintiff filed a notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

By letter dated December 16, 2014, Defendants asked the Court to vacate the Plaintiff's notice, dismiss the case with prejudice and impose sanctions against Plaintiff and its counsel Fisher.  Defendants submitted a formal motion on January 23, 2015, which Plaintiff opposed.  Meanwhile, on January 19, 2015, Fisher withdrew as counsel and was replaced by Burke.  Fisher opposed the request to sanction him personally.

## II.    DISCUSSION

### A.    Plaintiff's Dismissal Without Prejudice

Plaintiff's notice of voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(A)(i) is valid and will not be vacated.  Rule 41(a)(1)(A)(i) states that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  This rule is intended to "establish[] a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally to dismiss an action."  *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979).  Since no answer or motion for summary judgment has been filed, Plaintiff's dismissal without prejudice will not be vacated.

Contrary to Defendants' assertions, the circumstances of this action do not qualify for the narrow exception to Rule 41(a)(1)(A)(i).  In *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir. 1953), the Second Circuit vacated a voluntary dismissal following a preliminary injunction hearing that "last[ed] several days and generat[ed] a record of over 400 pages."  *Thorp*, 599 F.2d at 1174 (discussing *Harvey Aluminum*, 203 F.2d at 107).  The Second Circuit subsequently stated that, "in cases falling short of the extreme exemplified by *Harvey Aluminum*, notices of dismissal filed in conformance with the explicit requirements of Rule 41(a)(1)(i) are not subject to vacatur" on the ground that the merits of the controversy had been raised before the court.  *Id.* at 1176.  Those "extreme" circumstances are not present here.

### B.    Sanctions

Defendants move to sanction Plaintiff and its former counsel, Fisher, under 28 U.S.C. § 1927 and the Court's inherent powers for "submit[ting] a series of frivolous and legally indefensible filings in this action."  Although Plaintiff's and Fisher's conduct in this litigation

6

raises questions about whether they acted properly and whether Fisher acted competently, their

conduct does not rise to the level of bad faith and, accordingly, does not warrant sanctions.

"To deal effectively, fairly, and efficiently with sanction claims, district courts have a

difficult task, but wide discretion." *Oliveri v. Thompson*, 803 F.3d 1265, 1280 (2d Cir. 1986).

To warrant sanctions under § 1927 or under a district court's inherent powers, there must be

"clear evidence that (1) the offending party's claims were entirely without color, and (2) the

claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or

delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation marks

omitted). "A finding of bad faith, and a finding that conduct is without color or for an improper

purpose, must be supported by a high degree of specificity in the factual findings." *Wolters*

*Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

Defendants have not shown by clear evidence that Plaintiff or its counsel acted in bad

faith. First, Defendants assert that Plaintiff and Fisher unreasonably multiplied the proceedings in

bad faith. But upon receiving Defendants' October 2014 letters, Plaintiff, through Fisher, took

actions to address the deficiencies in the Amended Complaint highlighted in those letters,

including by seeking the assistance of experienced litigators. Plaintiff also filed a pre-motion

letter seeking leave to file a proposed SAC and stated that, if the Court granted leave to amend, it

"would have no objection to the Court vacating the October 29, 2014, response date" for

Defendants to respond to the Amended Complaint and "setting a new time for a response by the

Defendants." These actions undermine the assertion that Plaintiff and Fisher acted in bad faith.

Defendants also assert that Plaintiff and Fisher acted in bad faith by filing the notice to

dismiss without prejudice because the notice "preserve[s] the option to waste another court's time

and further harass Defendants." This argument is also unpersuasive. Since Plaintiff was entitled

to file the Rule 41 notice of voluntary dismissal, "[its] reasons for wanting to do so are not for [a court] to judge." *Scivantage*, 564 F.3d at 115 (citation omitted).  Moreover, the Federal Rules of Civil Procedure provide safeguards for Defendants if Plaintiff does commence a second action, including by barring Plaintiff from voluntarily dismissing the case without prejudice a second time and by permitting the court in the subsequent action to order Plaintiff to pay all of Defendants' costs and fees in this dismissed action.  Fed. R. Civ. P. 41(a)(1)(B), (d).

Accordingly, Plaintiff's availing itself of the opportunity to dismiss without prejudice afforded by Rule 41 does not amount to a showing of bad faith.  For these reasons, sanctions are not to be imposed on Plaintiff or its former counsel.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion is DENIED.  The Clerk of Court is directed to close Dkt. No. 62 and this case.

SO ORDERED.

Dated: May 27, 2015
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

8